**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

               **v.**                              **5:05-CR-217**
                                                          **(FJS)**

**GREGORY THOMAS a/k/a GREGORY-JASON:**
**Family of Thomas; and GERALD THOMAS, JR.;**

                           **Defendants.**
_____

| | |
|---|---|
| **APPEARANCES** | **OF COUNSEL** |
| **OFFICE OF THE UNITED** | **EDWARD R. BROTON, AUSA** |
| **STATES ATTORNEY** | |
| 100 South Clinton Street | |
| Syracuse, New York 13260 | |
| Attorneys for the United States of | |
| America | |
| | |
| **GREGORY THOMAS a/k/a** | |
| **GREGORY-JASON: Family of Thomas** | |
| P.O. Box 143 | |
| Jamesville, New York 13078 | |
| Defendant _pro se_ | |
| | |
| **JACOBS & JACOBS, ESQS.** | **MICHAEL A. JACOBS, ESQ.** |
| The Madison Building | |
| 31 Lake Street | |
| P.O. Box 159 | |
| Stamford, New York 12167 | |
| Attorneys for Defendant | |
| Gerald Thomas, Jr. | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      After a jury trial, Defendant Gregory-Jason: family of Thomas ("Defendant Gregory-

Jason") was found guilty of Counts 1-15, 20-21, and 23-27 of the Second Superceding

Indictment.  His brother, Defendant Gerald Thomas, Jr. ("Defendant BJ Thomas") was found

guilty of Counts 1-2, 4, and 13-15 of the Second Superceding Indictment.

Currently before the Court are the post-trial motions of Defendant Gregory-Jason and

Defendant BJ Thomas.[1]  Although Defendant Gregory-Jason did not specifically move for any

post-trial relief, he did file a post-trial document entitled "Notice of Void Judgment and Refusal

of Acceptance."  *See* Dkt. No. 230.

Defendant BJ Thomas moves, pursuant to Rule 33(a) of the Federal Rules of Criminal

Procedure, for a new trial on the ground that justice so requires (1) because, throughout the trial,

the Court allowed the Government to elicit testimonial hearsay from various witnesses that

seriously prejudiced him in violation of his Sixth Amendment right of confrontation as the

Supreme Court interpreted that right in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis

v. Washington*, 126 S. Ct. 2266 (2006), and (2) because there was insufficient evidence produced

at trial to support his convictions on Counts 13, 14 and 15 of the Second Superceding Indictment

in that the testimony of Marilyn Tanner and other witnesses was incredulous as a matter of law.

The Court will address each of these motions in turn.

_____

[1] After Mr. Jacobs filed this post-trial motion on behalf of Defendant BJ Thomas, he
received a letter from his client informing him that he was fired.  On September 6, 2006, Mr.
Jacobs filed a letter with the Court to which he attached a copy of Defendant BJ Thomas' letter.
*See* Dkt. No. 260.  Mr. Jacobs also notified the Court that he intended to attend Defendant BJ
Thomas' sentencing unless the Court directed otherwise.  *See id.*  Moreover, despite being fired,
on September 26, 2006, Mr. Jacobs filed a Sentencing Memorandum on Defendant BJ Thomas'
behalf, *see* Dkt. No. 270, and on October 5, 2006, he filed an Amended Sentencing
Memorandum of Defendant BJ Thomas' behalf, *see* Dkt. No. 278.

## II. DISCUSSION

**A.    Defendant Gregory-Jason's motion**[2]

Defendant Gregory-Jason, claiming to be "a diplomat from the Kingdom of Heaven with immunity as decreed in treaties by His Most Christian majesty, Prince George," filed a "Notice of Void Judgment and Refusal of Acceptance" shortly after the jury found him guilty of all of the Counts with which he was charged in the Second Superceding Indictment.  Although it is impossible for the Court to discern what, if any, specific post-trial relief Defendant Gregory-Jason is seeking, it appears that the gravamen of his argument is that this court lacks jurisdiction over him.

In support of this argument, he asserts that the Court's denial of his motion that he should be released because the Indictment was irregular and void was contrary to law.  *See* Dkt. No. 230 at 2.  Moreover, he contends that the Court erred when it removed the jury from the court room to prevent the jurors from hearing the Court read the "902 verified evidence" of no subject matter jurisdiction into the official record.  *See id.*  He argues that the Court should have allowed the jury to hear that "the grand jury was disqualified, that the indictment is irregular and void, and that the trial jury was going to be required to disqualify itself if said trial jury came to the

---

[2] As a preliminary matter, the Court notes that, on three separate occasions, after Defendant Gregory-Jason informed the Court that he wished to proceed *pro se*, the Court warned him of the risks of doing so.  *See* Dkt., unnumbered entries, dated February 7, 2006, February 16, 2006, and May 24, 2006.  In addition, on February 7, 2006, the Court appointed Mr. George Hildebrandt as counsel for the purpose of meeting with Defendant Gregory-Jason to discuss, in detail, the risks and dangers that he might face representing himself.  *See* Dkt., unnumbered entry, dated February 7, 2006.  Nonetheless, after talking to Mr. Hildebrandt, Defendant Gregory-Jason informed the Court on February 16, 2006, that he wanted to proceed *pro se* and that he was willing to accept Mr. Hildebrandt as stand-by counsel.  *See* Dkt. Sheet, unnumbered entry, dated February 16, 2006.

knowledge of the 902 verified evidence contained within challenge to jurisdiction . . . ." *See id.* at 2-3.  Defendant Gregory-Jason further asserts that "[r]emoving the trial jury from publication of 902 verified evidence that the court lacks subject matter jurisdiction is the crime of concealing material facts from an official court record and is therefore perjury of an official court record . . . and is a violation of 18 USCS 1001." *See id.* at 3.

Finally, he contends that

> [t]he exemption of the application of [18 U.S.C. § 1001] to the assistant U.S. Attorney, or any party in a judicial procedure who is allowed the right of silence does not extend to Judge Frederick J. Scullin, Jr., who violated his high office of Judge and fair and impartial protector of the rights of the parties and concealed the 902 verified evidence from the trial jury that would prove without doubt that Gregory-Jason: family of Thomas must be released from the trial.

*See id.*

As a result of these alleged errors, Defendant Gregory-Jason states that "[h]e do[es] not accept the verdict/judgment of the court and [he] does not consent, ascent, [sic] or acquiesce to any judgment from the incompetent trial jury predicated on a irregular and void indictment obtained by deception from an incompetent and self disqualified grand jury." *See id.* at 4.

This is not the first time that Defendant Gregory-Jason has raised this argument. Throughout this prosecution, he has asserted that this Court lacks jurisdiction over him.  Clearly, this is not the case.  There is no legal support for Defendant Gregory-Jason's contentions that the Second Superceding Indictment is defective, that the jury was incompetent,[3] or that the Court improperly excused the jury when it read his legal challenges to the Court's jurisdiction into the

---

[3] Defendant Gregory-Jason argues that, because the jurors have social security numbers, they are employees of the Government and, therefore, cannot serve as jurors.

record.[4]

Accordingly, to the extent that Defendant Gregory-Jason's "Notice of Void Judgment and Refusal of Acceptance" can be construed as a post-trial motion, the Court denies that motion.

**B.      Defendant BJ Thomas' post-trial motions**

*1. Confrontation Clause of the Sixth Amendment*

To support his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Defendant BJ Thomas argues, in the first instance, that "[t]hroughout the trial, the Court allowed the government to introduce testimonial hearsay evidence wherein the witness on the stand testified, over objection, to things other people had allegedly said about [Defendant BJ Thomas]." *See* Affirmation of Michael A. Jacobs, dated June 23, 2006, at ¶ 6.  In particular, Defendant BJ Thomas draws the Court's attention to the testimony of witnesses Jimmy Mayer, Dustin Rose and Michael Hagen, "who were obviously accomplices at the time of the conversations which they said they heard, and when [sic] they repeated over objection for the jury." *See id.* at ¶ 7.

Defendant BJ Thomas contends that Jimmy Mayer "testified about the transactions which involved B.J. Thomas where a person named Falco, whom Jimmy Mayer only met once in his life, provided the marijuana in the transaction.  Thereafter, Jimmy Mayer's girlfriend testified that Mayer knew Falco from more that [sic] one transaction." *See id.* at ¶ 8.  He also notes that the

---

[4] The Court notes that Defendant Gregory-Jason did not move under Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal or under Rule 33 of the Federal Rules of Criminal Procedure for a new trial nor has he stated any grounds that would warrant relief under either of these rules.

Court allowed "Dustin Rose and Michael Hagen . . . to testify to hearsay under the 'conspiracy' exception to the hearsay rule." *See id.* at ¶ 9. Defendant BJ Thomas asserts that the Court erred in allowing the Government to elicit this testimony because "[s]everal of the persons who were said to have spoken of the moving defendant were not called by the government to testify. None of them were shown to be unavailable, and the moving defendant had no opportunity to cross-examine any of them." *See id.* at ¶ 10.

To support his argument that the Court improperly admitted this testimony, Defendant BJ Thomas cites *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 126 S. Ct. 2266 (2006), for the propositions that the Sixth Amendment's Confrontation Clause "bars '. . . admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination' . . . [and that] '. . . even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class.'" *See* Jacobs Aff. at ¶¶ 12-13 (quotations omitted).[5]

Defendant BJ Thomas correctly quotes the Supreme Court's holding in *Crawford*. *See Crawford*, 541 U.S. at 53-54. His application of this holding to the statements at issue, however, is erroneous for several reasons. First of all, as the *Crawford* Court noted, "statements in

---

[5] Defendant BJ Thomas also relies upon two Second Circuit decisions to support his argument that the Court should have precluded the statements of his coconspirators – *Mungo v. Duncan*, 393 F.3d 327 (2d Cir. 2004), and *United States v. Martinez*, 413 F.3d 239 (2d Cir. 2005). However, neither of these cases is dispositive. Although both of these cases discussed the Supreme Court's holding in *Crawford*, the issue in *Mungo* was whether *Crawford* applied retroactively on collateral review, and the issue in *Martinez* was whether the constitutional right of confrontation bars the consideration of hearsay testimony at the sentencing proceeding. The Second Circuit answered both of these questions in the negative.

furtherance of a conspiracy" are "by their nature . . . **not** testimonial." *Id.* at 55 (emphasis added).

Second, as the Second Circuit explained in *Mungo*, "*Crawford* did not rule on whether the

Confrontation Clause has any application to nontestimonial hearsay." *Mungo*, 393 F.3d at 336

n.7 (citing *Crawford*, 124 S. Ct. at 1369-70).  Recently, however, in *Davis*, the Supreme Court

answered the question that *Crawford* left unanswered, stating that "[i]t is the testimonial

character of the statement that separates it from other hearsay that, while subject to traditional

limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 126 S. Ct.

at 2273.  Finally, under Rule 801(d)(2)(E) of the Federal Rules of Evidence, "a statement by a

coconspirator of a party during the course and in furtherance of [a] conspiracy" is not considered

hearsay.  Fed. R. Evid. 801(d)(2)(E).

Applying these principles to the statements at issue leads to the inescapable conclusion

that Defendant BJ Thomas is not entitled to a new trial based upon his argument that the Court's

admission of this testimony violated his Sixth Amendment right to Confrontation.  First, the

Court finds, as a matter of law, that the evidence established that a conspiracy existed, that

Defendant BJ Thomas, Jimmy Mayer, Dustin Rose and Michael Hagen were coconspirators in

that conspiracy, and that Defendant BJ Thomas' conspirators made these statements during the

course and in furtherance of that conspiracy.  Thus, because such statements are **not** testimonial,

*Crawford* does not compel their preclusion.  Rather, under *Davis*, the Rules of Evidence govern

the admissibility of these statements and, as noted, Rule 801(d)(2)(E) specifically provides that

coconspirator statements are **not** hearsay.  In sum, because the statements about which Defendant

BJ Thomas complains are neither testimonial nor hearsay, the Court did not err in permitting the

Government to elicit these statements at trial.  Accordingly, the Court denies Defendant BJ

Thomas' motion for a new trial on this ground.

### 2. Insufficient evidence

Alternatively, Defendant BJ Thomas asserts that he is entitled to a new trial because "[t]he only evidence of his guilt concerning [Counts 13, 14, and 15] consisted of the testimony of witness Tanner, and some other evidence by the witness, Carberry, which was, taken together, completely incredulous as a matter of law." *See* Jacobs Aff. at ¶ 19.  Specifically, Defendant BJ Thomas directs the Court's attention to Marilyn Tanner's testimony "that she was not involved in prostitution except for the one arrest that she was involved in, that she came to B.J. Thomas' apartment on six occasions when she only gave massage oil treatments to B.J. Thomas but she could not recognize him in person." *See id.* at ¶ 20.  He argues that, because this was the only evidence regarding Counts 13, 14 and 15, and this evidence was "incredulous as a matter of law," "[t]here is no proof beyond a reasonable doubt as to Counts 13, 14, or 15 that [he] was involved in these Counts . . . [and] [e]xamining that evidence in the light most favorable to the government still leaves it insufficient to support [Defendant BJ Thomas'] conviction on Counts 13, 14, and 15 beyond a reasonable doubt." *See id.* at ¶¶ 21-22.

"In considering whether to grant a new trial, a district court may itself weigh the evidence and the credibility of witnesses, but in doing so, it must be careful not to usurp the role of the jury." *United States v. Canova*, 412 F.3d 331, 348-49 (2d Cir. 2005) (citations omitted).  In making this assessment, "[t]he trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted).  However, "it is only where exceptional

-8-

circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" *Id.* (quoting *Sanchez*, 969 F.2d at 1414). "An example of exceptional circumstances is where testimony is 'patently incredible or defies physical realities . . . .'" *Id.* (quotation omitted). "The 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice. . . . There must be a real concern that an innocent person may have been convicted.'" *Canova*, 412 F.3d at 349 (quotation and other citations omitted).

Setting aside the issue of whether testimony can ever be incredulous "as a matter of law," the jury was free to accept or reject the testimony and to assess the credibility of all the witnesses, including Ms. Tanner.[6]  Moreover, as the Government correctly notes, the portion of Ms. Tanner's testimony with which Defendant BJ Thomas takes issue is, at best, tangential to the issue of whether Defendant BJ Thomas was guilty of the crimes charged in Counts 13, 14 and 15 of the Second Superceding Indictment.[7]  Furthermore, Defendant BJ Thomas has not pointed to

_____

[6] The Court notes, as the Government did, that Defendant BJ Thomas does not specify what portion of Mr. Carberry's testimony was incredulous "as a matter of law."

[7] Count 13 of the Second Superceding Indictment charges, in pertinent part, that

> 2. In or about October through December 2002, the exact date being unknown to the grand jury, in the Northern District of New York, the defendants,
> **GREGORY THOMAS and GERALD THOMAS, Jr., a/k/a BJ,** knowingly and intentionally combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the grand jury to unlawfully obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by extortion, in that the defendants,
> **GREGORY THOMAS and GERALD THOMAS, Jr., a/k/a BJ,** did conspire to obtain the property of Marilyn Tanner with her

(continued...)

anything in the record to indicate that there are "extraordinary" circumstances that warrant the

---

[7](...continued)
> consent having been induced by the wrongful use of actual and
> threatened force, violence and fear, including fear of economic
> harm.
>> In violation of Title 18, United States Code, Section 1951.

Count 14 of the Second Superceding Indictment charges, in pertinent part, that

> 2. In or about December 2002, the exact date being unknown to the
> grand jury, in the Northern District of New York, the defendants,
> **GREGORY THOMAS and GERALD THOMAS, Jr., a/k/a BJ**
> did unlawfully obstruct, delay and affect commerce as that term is
> defined in Title 18, United States Code, Section 1951, and the
> movement of articles and commodities in such commerce, by
> extortion, in that the defendants,
> **GREGORY THOMAS and GERALD THOMAS, Jr., a/k/a BJ,**
> did obtain and attempt to obtain the property of Marilyn Tanner
> with her consent having been induced by the wrongful use of actual
> and threatened force, violence and fear, including fear of economic
> harm, in that the defendants did demand payment of $10,000 by
> means of armed threats, including threats to the safety of Tanner's
> family and threat of economic harm to the continued operation of
> Tanner's business.
>> In violation of Title 18, United States Code, Section 1951.

Count 15 of the Second Superceding Indictment charges that

>> In or about December 2002, the exact date being unknwon
> to the grand jury, at the residence of Gerald Thomas, Jr., a/k/a BJ,
> in Troy, in the Northern District of New York, the defendants,
> **GREGORY THOMAS and GERALD THOMAS, JR., a/k/a BJ,**
> aiding and abetting each other, knowingly used, carried and
> brandished firearms, to wit: a .45 caliber handgun and a Glock 9
> mm handgun, during and in relation to a crime of violence for
> which they may be prosecuted in a court of the United States,
> namely extortion contrary to Title 18, United States Code, Section
> 1951, as charged in Count Fourteen of this indictment.
>> In violation of Title 18, United States Code, Sections
> 924(c)(1) and 2.

*See* Dkt. No. 121, Second Superceding Indictment, at Counts 13, 14 and 15.

Court's intrusion upon the jury's credibility assessments.  Nor has Defendant BJ Thomas pointed to anything in the record to even suggest, let alone convince, the Court that an innocent person may have been found guilty.

Finally, even if the Court were to ignore this portion of Ms. Tanner's testimony, there is sufficient evidence, some of which the Government points out in opposition to this motion, to support the jury's findings that Defendant BJ Thomas was guilty, beyond a reasonable doubt, of the crimes charged in Counts 13, 14 and 15:

> Donald Wall's testimony that Defendant BJ Thomas had told him that he had used an escort service frequently;
>
> Michael Hagen's testimony that he was at Defendant BJ Thomas' apartment the night that the extortion occurred and that Defendant BJ Thomas made a phone call prior to leaving the apartment and that when he and Defendant BJ Thomas left the apartment Defendant Gregory-Jason and Carberry remained behind;
>
> Shawn Carberry's testimony that he personally participated in the armed extortion of Marilyn Tanner with Defendant Gregory-Jason and that he collected $10,000 in two installments of $6,000 and $4,000 each from Tanner;
>
> Robert Bleyle's testimony that Defendant Gregory-Jason told him that he had shaken down a madam; and
>
> Defendant BJ Thomas' telephone records, which showed that he had made thirteen calls to Ms. Tanner's escort service between July and December of 2002 and that the last call was at 9:31 p.m. on the night that the armed extortion occurred.

Accordingly, for all these reasons, the Court denies Defendant BJ Thomas' motion for a new trial on this ground.

## III. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Gregory-Jason's "Notice of Void Judgment and Refusal of Acceptance," to the extent that it can be construed as a post-trial motion, is **DENIED**; and the Court further

**ORDERS** that Defendant BJ Thomas' motion for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedures is **DENIED.**

**IT IS SO ORDERED.**

Dated: October 12, 2006
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

-12-